UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMIR HOSSEIN KHAZAEI, *et al.*,

Plaintiffs,

v.

ANTONY J. BLINKEN,

Defendant.

Civil Action No. 23-1419 (JEB)

## MEMORANDUM OPINION

Plaintiffs are Iranian nationals who applied for non-immigrant visas to study or teach at various U.S. academic institutions this fall, as well as their spouses and minor children. They contend that the seven to twelve months each of them has waited for a final decision (as of the filing of the Complaint) violates the Administrative Procedure Act in two ways: first, it constitutes an "unreasonable delay," and second, it evinces an "arbitrary" and "capricious" pattern of discrimination against Iranian student-visa applicants. Defendant Antony Blinken, the Secretary of State, now moves to dismiss. While the Court finds the Government's threshold arguments regarding jurisdiction and justiciability largely without merit, it will nonetheless dismiss the four Plaintiffs who have since received visas and grant the Motion on the merits as to those remaining.

**I.   Background**

   A.  Legal Background

Foreign students who wish to pursue a "full course of study" in a U.S. academic institution may apply for an "F-1" non-immigrant visa. See 8 U.S.C. § 1101(a)(15)(F).

1

Similarly, "exchange visitors" who have been accepted into an approved program to teach or study may apply for a non-immigrant visa under the "J-1" classification.  See id. § 1101(a)(15)(J).  Spouses and minor children can accompany them by applying for a derivative "F-2" or "J-2" visa.  See id. § 1101(a)(15)(F)(ii), (J).  Typically, all of these applicants must appear for an in-person interview with a consular officer to evaluate their eligibility.  See id. § 1202(h).  Absent a visa sanction against the applicant's country (which may exist under circumstances not relevant here), the officer must either "issue" or "refuse" the visa.  See 22 C.F.R. § 41.121(a).

The visa shall be refused "if (1) it appears to the consular officer from statements in the application, or in the papers submitted therewith, that [the non-citizen] is ineligible to receive a visa . . . , (2) the application fails to comply with the [Immigration and Nationality Act], or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa."  8 U.S.C. § 1201(g).  In cases where the officer requires additional information to determine the applicant's eligibility, however, he may refuse the visa pending further "administrative processing."  U.S. Dep't of State, Administrative Processing Information (last visited Sept. 5, 2023), https://bit.ly/2GO3jEg [https://perma.cc/NK8K-9U8H]. The status of each application is published on the State Department's website.  See U.S. Dep't of State, Visa Status Check (last visited Sept. 5, 2023), http://tinyurl.com/52px458z [https://perma.cc/SBV4-AT2N].

In the wake of the September 11 terrorist attacks, Congress enacted the Enhanced Border Security and Visa Entry Reform Act of 2002.  The Act, among other things, imposed new restrictions on the issuance of visas and more stringent procedures for monitoring the entry and exit of foreign students and exchange visitors.  See, e.g., 8 U.S.C. §§ 1731–32, 1735, 1761–62.

It provides, as relevant here, that non-immigrant visas may not be issued to a non-citizen from a country that has been designated a state sponsor of terrorism "unless the Secretary of State determines . . . that [the non-citizen] does not pose a threat to the safety or national security of the United States." Id. § 1735. Iran has been so designated since 1984. See U.S. Dep't of State, State Sponsors of Terrorism (last visited Sept. 5, 2023), http://tinyurl.com/mtd2aasf [https://perma.cc/CBT2-2C87].

    B.  Factual Background

With this statutory and regulatory backdrop in mind, the Court proceeds to the facts, which it draws from the Complaint, as required at this stage; it also takes judicial notice of Plaintiffs' visa-application statuses posted on the State Department's website (as Defendant presents them in his Motion papers). See, e.g., Markowicz v. Johnson, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (taking judicial notice of "information posted on official public websites of government agencies").

Plaintiffs are fifteen Iranian citizens who applied for F and J visas to participate in academic programs (or accompany participating family members) at various institutions in the United States in Fall 2023. See ECF No. 1 (Compl.), ¶¶ 9–23, 72. They comprise four individual applicants and four families. First, the individuals: Amir Hossein Khazaei applied for an F-1 visa to study Computer Graphics at Texas A&M University and appeared for an interview with a consular officer on July 22, 2022. Id., ¶ 9. Shabnam Salehi also applied for an F-1 visa to pursue a Master's in Architectural and Building Sciences and Technology at the University of California, Los Angeles and interviewed on June 1, 2022. Id., ¶ 22. Hamidreza Azimy and Solmaz Pourrahim were each admitted to a doctorate program at the University of New

Hampshire and applied for an F-1 visa. Id., ¶¶ 10, 23. Azimy appeared for his interview on July 19, 2022, and Pourrahim attended hers eighteen days earlier. Id.

Next, the families: Dr. Iman Shirinbak, who was accepted as a postdoctoral fellow at the Massachusetts General Hospital and Harvard School of Dental Medicine and Maxillofacial Surgery Research, along with his wife and child — Samira Basir Shabestari and E.S. — applied for J visas. Id., ¶¶ 12–13. They all appeared for consular interviews in November 2022. Id., ¶¶ 11–13. Parinaz Jalalahmadi sought an F-1 visa to pursue a doctorate in STEM Educational Methods at the University of Massachusetts, Dartmouth. Id., ¶¶ 14. Her husband Mohammadelyas Rafati and two children applied for derivative F-2 visas. Id., ¶¶ 14–17. They interviewed on July 8, 2022. Id. Sara Sarbaz likewise applied for an F-1 visa to pursue a doctorate in Mechanical Engineering at Ohio State University, and her husband, Mohsen Razinia, applied for an F-2 visa. Id., ¶¶ 20–21. Both interviewed with a consular officer on June 21 of that year. Id. Finally, Saeed Haghniazjahromi applied for an F-1 visa for a doctorate program at Worcester Polytechnic Institute, while his wife, Fatemeh Harasani, applied for an F-2 visa. Id., ¶¶ 18–19. They were interviewed together on July 13, 2022. Id.

Each Plaintiff's visa application was refused pending further administrative processing. See ECF No. 4 (Def. MTD) at 2, 5–10. Still awaiting a final decision, on May 18, 2023, they sued Blinken, alleging two counts: first, that the State Department has unreasonably delayed adjudicating their visa applications in violation of 5 U.S.C. §§ 555(b) and 706(1), and second, that State has a "pattern and practice" of delaying the issuance of visas to Iranian students that is "arbitrary" and "capricious" under 5 U.S.C. § 706(2)(A). Id., ¶¶ 75–96, 97–108. Two weeks later, on May 31, 2023, Khazaei received his visa. See Def. MTD at 5. Salehi received hers the

4

following week. Id. at 9.  On July 18, the Secretary moved to dismiss.  And sometime thereafter, Haghniazjahromi and Harasani were also issued visas.  See ECF No. 7 (Reply) at 6–7.

**II.      Legal Standard**

Defendant's Motion invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  When a defendant brings a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "[t]he plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, No. 19-1049, 2020 WL 674778, at *2 (D.D.C. Feb. 11, 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 174 (D.D.C. 2020)).  The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Though a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

At the outset, the Court will dismiss the Complaint as to Plaintiffs Khazaei, Salehi, Haghniazjahromi, and Harasani, whose claims are now moot. Khazaei and Salehi were issued visas after the Complaint was filed, see Def. MTD at 5, 9, 18, and, as Plaintiffs concede, see ECF No. 5 (Pl. Opp.) at 2 n.1, they have thus already received the relief they seek. Haghniazjahromi and Harasani were also subsequently issued visas. See Reply at 6–7. Their claims are moot for the same reason.

As to the remaining Plaintiffs' unreasonable-delay claims, State raises several other threshold arguments for dismissal — namely, that Plaintiffs lack standing, allege claims that are non-justiciable under the consular non-reviewability doctrine, and have failed to allege a discrete action that the State Department was required to take (a precondition for unreasonable-delay claims). It argues, alternatively, that the delays at issue are reasonable under the governing legal standard. As to the arbitrary-and-capricious claims, Defendant contends only that Plaintiffs have not sufficiently alleged a discriminatory "pattern and practice," and that the cause of action raises non-justiciable questions of foreign policy. The Court addresses each argument in turn.

   A. Unreasonable Delay

      1. *Standing*

First up is standing. To meet its constitutional requirements under Article III, Plaintiffs must show "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" Ark Initiative v. Tidwell, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). The Secretary argues that Plaintiffs have

suffered no injury in fact because "delay" is a procedural injury insufficient to confer standing unless tethered to a concrete interest, and foreign nationals residing outside the United States have no cognizable interest in a visa. See Def. MTD 12–13 (citing Trump v. Hawaii, 138 S. Ct. 2392, 2419 (2018) (holding that "foreign nationals seeking admission have no constitutional right to entry")). He suggests, further, that any injury would not be redressable because the Secretary of State, the only Defendant named in this action, has no means of compelling consular officers to issue them visas. Id. at 16–17. Even if he did, moreover, Section 1735(a) would nonetheless dictate that Plaintiffs would be refused because they are Iranian citizens, Iran is designated a state sponsor of terrorism, and none has pled that the mandated safety determination has been made as to her. Id.

Defendant treads familiar ground. There is no daylight of note between these assertions and those rejected by this Court (and others in this district) in recent cases challenging delays in processing visa applications. See, e.g., Rahman v. Blinken, 2023 WL 196428 (D.D.C. Jan. 17, 2023), Khan v. Blome, 2022 WL 17262219 (D.D.C. Nov. 29, 2022); Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1 (D.D.C. 2022). While the Court notes Defendant's "disagree[ment]" with these prior decisions, see Def. MTD at 33; Reply at 4, State has not adduced any persuasive reason for this Court to deviate from them.

Here, as in those cases, Plaintiffs have sufficiently alleged an injury in fact. They each enjoy a "procedural right to reasonably expeditious agency action that is tethered to [their] concrete professional and financial interest in earning an advanced degree" (or completing a postdoc research program, in Dr. Shirinbak's case). Rahman, 2023 WL 196428, at *2. Here, as there, their injuries are redressable. While the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing

them to decide pending applications "within a reasonable time," as the APA requires. See Al-Gharawy, 617 F. Supp. 3d at 10 (quoting 5 U.S.C. § 555(b)); Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (noting that INA "preclud[es] even the Secretary of State from controlling [consular officers' visa] determinations") (emphasis added; citation omitted).

Neither does Defendant's argument regarding Section 1735 hit the target. It assumes that redress could come only in the form of "re-adjudicat[ing]" applications that have already been adjudicated pursuant to Section 1735(a). See Def. MTD at 16–17. But the remaining Plaintiffs have pled that their applications are still pending administrative processing, see Compl., ¶¶ 10–17, 20, 21, 23, 95, and four of them, in fact, have been issued visas since the inception of this litigation. Plainly, the Department's review of their applications is not complete. Plaintiffs' injuries, furthermore, may be redressed with an order to complete that review more expeditiously. Standing thus exists here.

2. *Non-Justiciability*

The Secretary's other threshold arguments are as familiar as the last and no more successful. He contends that Plaintiffs' claims are barred by the doctrine of consular non-reviewability and are thus non-justiciable. See Def. MTD at 24–27, 32–36. "Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." Baan Rao, 985 F.3d at 1024 (citing Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir. 1999)); see Trump, 138 S. Ct. at 2418–19). The doctrine rests on the principle that decisions to exclude non-citizens "may implicate relations with foreign powers" and, accordingly, are "frequently" judgments "of a character more appropriate to either the Legislature or the Executive." Baan Rao, 985 F.3d at 1024 (citation omitted). It does not, however, apply where "the government has not made a final visa

decision." P.K. v. Tillerson, 302 F. Supp. 3d 1, 11 (D.D.C. 2017) (emphasis added); see also Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020); Kinsley v. Blinken, 2021 WL 4551907, at *4–5 (D.D.C. Oct. 5, 2021); Zandieh v. Pompeo, 2020 WL 4346915, at *3 (D.D.C. July 29, 2020).

State counters that Plaintiffs' applications have already been refused, as stated on the Department's online visa-status checker. See Def. MTD at 5–10, 34–35. It further suggests that "[w]hile additional documentation or investigation may prompt a consular officer to revisit that decision," the visas have still been "withh[e]ld" within the meaning of Baan Rao. Id. at 34 (emphasis added). But the Government, as courts in this district have repeatedly admonished, "cannot 'unsubscribe' from judicial review of cases in administrative processing for unreasonable delay by simply changing [its] website." Sawahreh v. U.S. Dep't of State, 630 F. Supp. 3d 155, 160 (D.D.C. 2022) (collecting cases). If Plaintiffs' applications are still under consideration, such that their visas may yet issue, then the Department's obligations under 5 U.S.C. §§ 555(b) and 706(1) continue to apply with equal force.

To the extent that the reason for the delay is to allow the Secretary to determine whether each Plaintiff "does not pose a threat to the safety or national security of the United States," as required under Section 1735 before a visa can issue, Plaintiffs' unreasonable-delay claims are still justiciable. Contra Def. MTD at 26. That determination closely resembles the delayed travel-ban-exemption determination at issue in Zandieh, 2020 WL 4346915, and deemed justiciable by this Court. There, a plaintiff had filed I-130 immigration petitions for her Iranian parents. Id. at *1. Iranians, however, were listed among the non-citizens "suspended" from entering the United States under a proclamation issued by then-President Donald Trump. See Pres. Proclamation 9645, 82 Fed. Reg. 45,161, 45,165 (Sept. 24, 2017). They could be granted

an exemption, however, if, among other requirements, their entry "would not pose a threat to the national security or public safety of the United States." Id. at 45,168.  When the plaintiffs sued to expedite the father's petition following a three-year delay, the Government argued (as it does here) that his petition was already refused under the Proclamation (notwithstanding the possibility of waiver), and that the suit was therefore barred by the consular non-reviewability doctrine.  See Zandieh, 2020 WL 4346915, at *2–3.

Citing a number of cases in this district construing a visa "refusal" subject to a waiver under Proclamation 9645 as non-final, this Court rejected that argument.  Id. (citation omitted).  The Secretary offers no reason why the same outcome is not warranted here.  In short, because the Department's evaluation of Plaintiffs' visa applications is ongoing, the consular non-reviewability doctrine does not apply, and Plaintiffs' unreasonable-delay claims are subject to judicial review.

    3. *Merits*

        a. Discrete Required Action

Before moving on to the heart of the merits, the Court addresses a necessary precondition for unreasonable-delay claims.  Such claims invoke 5 U.S.C. § 706(1), which provides that a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."  As the Supreme Court has held, "[A] claim under [this provision] can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."  Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004).  "The limitation to discrete agency action precludes the kind of broad programmatic attack [the Court] rejected in Lujan v. National Wildlife Federation, 497 U.S. 871 [(1990)]."  Id. (referring to challenge to federal agency's management of "land withdrawal review program" at systemic level and encompassing over

"1250 or so" individual land-use decisions, see Lujan, 497 U.S. at 890–94). "The limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." Id. at 65. Defendant contends that the Complaint flunks this test.

The Court is not convinced. Plaintiffs' allegation that the Department has failed to grant or finally refuse their then-fifteen (now-eleven) visa applications is a far cry from the kind of "broad programmatic attack" that Section 706(1) cannot accommodate. Id. at 64. Granting or refusing a visa to an applicant who has been interviewed is clearly a discrete agency action. That action, moreover, is required by both the APA and the Department's own regulation. See Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (noting that 5 U.S.C. § 555(b) "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time'"); Vulupala v. Barr, 438 F. Supp. 3d 93, 100 (D.D.C. 2020) (concluding that "[g]ranting or refusing a final visa application is a mandatory agency action" under 22 C.F.R. § 41.106).

      b. TRAC Factors

The precondition having been met, the central inquiry now is "whether the agency's delay is so egregious as to warrant mandamus." Telecommunications Rsch & Action Ctr. v. FCC (TRAC), 750 F.2d 70, 79 (D.C. Cir. 1984). The Court considers the six oft-employed TRAC factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or

11

>competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. at 80 (cleaned up).

These considerations are often grouped into four basic inquiries. "First, is there any rhyme or reason — congressionally prescribed or otherwise — for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?" Rahman, 2023 WL 196428, at *4 (cleaned up).

The first two factors favor Defendant because processing visas takes a baseline amount of time. "District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Id. (citation omitted). Here, Plaintiffs have waited only between seven and twelve months. See, e.g., Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding 29-month delay reasonable); Zandieh, 2020 WL 4346915, at *7 (same). Further, to the extent that the delay is caused by the need to make safety determinations as to Plaintiffs under Section 1735, "Congress has supplied no timeline for processing" such determinations. Zandieh, 2020 WL 4346915, at *5 (noting same as to travel-ban exemption). Absent a shorter statutory timeline, a delay of less than a year is not unreasonable. See id.

Factors three and five weigh in Plaintiffs' favor, albeit only slightly. They allege that they "will lose their eligibility to enter the United States as F-1, J-1, or J-2 nonimmigrants" unless a decision is rendered. See Compl., ¶ 73. Indeed, some of them have already lost offers of admission as a result of the delay. See id., ¶¶ 10, 22–23. The Court does not, however, credit the

unspecified "threats in Iran from seeking to study abroad" that Plaintiffs raise for the first time in their Opposition. See Pl. Opp. at 26.

Factor four, which is often the weightiest, tips toward Defendant. As this Court has previously concluded under similar facts, Plaintiffs' applications are "delayed because of 'resource-allocation decisions' that 'do not lend themselves to judicial reorderings of agency priorities.'" Rahman, 2023 WL 196428, at *4 (cleaned up); see also Khan, 2022 WL 17262219, at *5. Plaintiffs deny that they are "asking to jump the line" — insisting, instead, that they request "the entire line [] move more swiftly." Pl. Opp. at 26. While a clever reframing of the issue, it does not persuade. The relief they seek is an order compelling a decision on their visas "within 7 days or prior to the start date[s] of their full course[s] of study." Compl., ¶ C (emphasis added). However Plaintiffs style that request, it will inevitably entail a "judicial reordering" of the Department's priorities. Cf. Skalka v. Kelly, 246 F. Supp. 3d 147, 153 (D.D.C. 2017) (noting that courts should exercise caution "[w]here the agency action sought is one of many similar adjudications that the agency must complete").

The sixth factor, finally, is neutral at best. Plaintiffs suggest that the Department's "disparate treatment of Iranian national students is indicative of bad faith or impropriety." Pl. Opp. at 27. This allegation is merely conclusory. To the extent that it depends on processing delays caused by Section 1735, the Court will not construe the Department's adherence to its statutory obligations as evidence of impropriety. In all, the TRAC factors counsel the dismissal of Plaintiffs' unreasonable-delay claims.

As the parties agree that the Court may resolve the instant Motion without an administrative record, it need not address their ancillary dispute over Defendant's compliance with Local Rule 7(n)(1). See Def. MTD at 44 n.6; Pl. Opp. at 27 n.7.

B.  Arbitrary and Capricious

Plaintiffs also bring arbitrary-and-capricious claims.  See Compl., ¶¶ 97–108 (citing 5 U.S.C. § 706(2)(A)).  These are apparently "directed to the pattern or practice of disparate treatment to Iranian applicants for student visas who have only received reinforcement from the consulate that they remain eligible for a visa, but little substantive information for the lack of finality."  Pl. Opp. at 3; see Compl., ¶¶ 97–108.  While Defendant's Motion largely fails to address this count, the Court discerns at least two arguments for dismissal buried within the section on non-justiciability.  There, State maintains that Plaintiffs' "bare allegations" of a discriminatory pattern and practice are insufficient at this stage.   See Def. MTD at 27 (citing Compl., ¶¶ 92–102).  It states, alternatively, that "because they challenge the terms and conditions upon which [noncitizens] may come to this country," the "nonreviewability principles" referenced earlier would "bar review."  Id.

As the Court agrees with the first contention, it declines to address the second.  Plaintiffs allege no facts in support of the existence of a broader "pattern and practice" by U.S. consulates against Iranian student-visa applicants beyond their own individual experiences.  See Iqbal, 556 U.S. at 681 ("conclusory" allegations of discrimination "not entitled to be assumed true").  They do not, for example, allege that the delays they have experienced are unique to Iranian students.  Much of the caselaw they cite, in fact, suggests the opposite.  See, e.g., Rahman, 2023 WL 196428, at *1 (Bangladeshi student-visa applicant facing eleven-month delay); Khan, 2022 WL 17262219, at *1 (Pakistani J-1 visa applicant facing seven-month delay); Sawahreh, 630 F. Supp. 3d at 156–57 (Jordanian J-1 applicant facing fifteen-month delay); see also Pl. Opp. at 3 (citing Rahman, Khan, and Sawahreh).  Even assuming that the validity of the Department's discriminatory "pattern and practice" is a subject fit for judicial review, Plaintiffs have not sufficiently alleged that such pattern and practice exists.  This count does not survive either.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss.  A separate Order will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  September 18, 2023